## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Robert Robbs,

                Plaintiff,

v.

PA Kevin McCrystal, RN Gina Burns, Dr. Cary Freston, and Rochelle Lightner,

                Defendants.

Civil No. 3:20-CV-01584 (MEG)

March 15, 2023

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and PLAINTIFF'S MOTION TO AMEND WITH EVIDENCE

Plaintiff Robert Robbs, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983, against then-employees of the Connecticut Department of Correction, Physician Assistant Kevin McCrystal, Registered Nurse Gina Burns, Dr. Cary Freston, and Rochelle Lightner in their individual capacities. Pending is Defendants' Motion for Summary Judgment [ECF No. 35] and Plaintiff's renewed Motion to Amend with Evidence [ECF No. 65]. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's renewed Motion to Amend with Evidence is DENIED.

## I.      PLAINTIFF'S RENEWED MOTION TO AMEND WITH EVIDENCE [ECF NO. 65]

On December 28, 2022, nine months after Defendants filed their Motion for Summary Judgment, Plaintiff filed a Motion to Amend contending that "recently discovered evidence . . . is pertinent to this case." ECF No. 61. He stated that his mother recently mailed several boxes to him containing a daily log that he kept of the "corrections officers and medical personnel . . . [he] encountered" from November 2016 to January 2021. *Id.* at 1-2. The motion was denied without

prejudice on two bases.  First, because he did not state what pleading he sought to amend and did not otherwise explain the basis for the amendment.  And, second, he did not establish that the daily log was newly discovered evidence unknown to him as the log was kept by him throughout his incarceration and known to him when he filed this action and throughout this litigation.  ECF No. 62.  He was further directed that any refiling of the motion should plainly state the pleading he was seeking to amend, the basis for the amendment, and explain the reason for the delay.  *Id.*

On January 24, 2023, Plaintiff filed a second Motion to Amend with Evidence stating that from November 17, 2016 (after the fall in the shower) his daily log recorded all contact with medical staff and correctional officers about his "constant pain and suffering."  ECF No. 65, at 1-2.  He stated that this daily log coincides with medical records and treatment and will show the times that his requests were dismissed by mental health, medical, and prison staff.  ECF No. 65, at 3.  During a conference call held on February 3, 2023, the Court directed Plaintiff to provide copies of the documents he seeks to include in a supplemental response to summary judgment to the Court and to Defendants' counsel, and a deadline was set for Defendants to file a responsive pleading.  ECF No. 68.  Plaintiff filed a 224 page daily log spanning from November 17, 2016 through September 7, 2020 that he seeks to "introduce in Court."  ECF No. 72.  Pursuant to the Court's Order, on February 24, 2023, Plaintiff designated eighteen entries from the daily log he was seeking to add as exhibits to his opposition to summary judgment.  ECF No. 75.  A hearing was held on March 1, 2023.

### A.  Plaintiff has not demonstrated good cause for the amendment

It is well-settled in this Circuit that "the Rule 16(b) 'good cause' standard, rather than the more lenient standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings."  *See Parker v. Colum. Pictures Indus.*, 204 F.3d 326,

340 (2d Cir. 2000) (internal citations omitted) (collecting cases); *Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-cv-0054(JCH), 2022 WL 807052, at *1 (D. Conn. Mar. 16, 2022). In other words, "where a party's motion to amend would require altering a court's scheduling order, the party 'must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend.'" *Precision Trenchless, LLC,* 2022 WL 807052, at *1 (quoting *Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (emphasis added and internal brackets omitted)).

Good cause turns on the "diligence of the moving party". *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). "The movant bears the burden of showing diligence." *Wade v. Kay Jewelers, Inc*., 3:17-cv-00990(MPS), 2018 WL 3553340, at *1 (D. Conn. July 24, 2018). "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the motion deadline." *Verdone v. Am. Greenfuels, LLC*, 3:16-cv-01271(VAB), 2017 WL 3668596, at *2 (D. Conn. Aug. 24, 2017) (citation and quotation marks omitted). However, diligence is not the only consideration, and a court "also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Here, Plaintiff has not demonstrated that he acted diligently. Plaintiff states that he kept the daily log from 2016 through 2021, but that it was recently mailed to him by his mother in Iowa. Regardless of why the log was in Iowa, Plaintiff fails to address why this log was unavailable when he filed this lawsuit on December 21, 2020, or why he failed to produce the log during discovery, or when he sought leave to amend in January 2021. ECF No. 32, at 35-5. Discovery closed over a year ago in February 2022 and Defendants' summary judgment motion has been pending since March 2022. Plaintiff failed to file a timely response to the Defendants' motion, and even when

3

he did respond, nearly nine months later and after several court orders, his response made no mention of the daily log that he now seeks to submit.  ECF Nos. 48, 53, 55, 57.  Plaintiff has provided no reasonable justification for such a significant delay in the disclosure of material created and known to him since before this lawsuit was filed.  *380544 Can. Inc. v. Aspen Tech, Inc.*, No. 07-cv-1204 (JFK), 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) (finding that plaintiffs "offered no compelling or even genuine explanation for the delay.").  Inexcusable delay, whether by discovery of new evidence or otherwise, will not satisfy the good cause standard.[1]

Defendants argue that the admission of this document long after the close of discovery and after Defendants timely moved for summary judgment would unduly prejudice them as they are unable to investigate or conduct any discovery as to this daily log, including deposing Plaintiff as to its contents, creation and any other grounds to contest the admissibility or relevance of such material.[2]  ECF No. 73, at 6 (citing *Singh v. Sachem Cent. Sch. Dist.,* 342 F.R.D. 367, 372

---

[1]  Courts have denied motions to amend with delays much shorter than the one at hand.  *See*, *e.g.*, *Volunteer Fire Assoc. of Tappan, Inc. v. Cnty. of Rockland*, 09-cv-4622 (CS), 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010) (good cause lacking where plaintiff failed to move to amend complaint until four months after advising court that it wished to do so); *Rambarran v. Mt. Sinai Hosp.*, 06-cv-5109 (DF), 2008 WL 850478, at *3 (S.D.N.Y. Mar. 28, 2008) (good cause not demonstrated where plaintiff moved to amend five months following the deadline and failed to identify the new evidence giving rise to the new claims or when such evidence was discovered); *Lawrence v. Town of Cheektowaga*, 04-cv-963S, 2006 WL 2000124, at *3 (W.D.N.Y. July 17, 2006) (delay of nearly one year after plaintiff obtained information giving rise to requested amendment defeated motion to amend complaint); *Baergas v. City of New York*, 04-cv-2944 (HBP), 2005 WL 2105550, at *10 (S.D.N.Y. Sept. 1, 2005) (two-month delay in filing motion to amend after advising court of intent to do so did not satisfy good cause standard).

[2]  Defendants assert another compelling basis for denying the motion, arguing that the daily log is "inadmissible hearsay that cannot be considered in ruling on the defendants' summary judgment motion."  ECF No. 73, at 7 (citing *Porter v Quarantillo,* 722 F.3d 94, 97 (2d Cir. 2013) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment[.]"))  They argue, and the Court agrees, that, not only is the daily log itself hearsay, but many entries in the log contain hearsay within hearsay, further demonstrating its inadmissibility.  *Hudson v. Fischer*, No. 06-cv-1534, 2008 WL 5110974, at *9 (N.D.N.Y. Dec. 2, 2008) ("The log book is, primarily, an out of court statement by Plaintiff offered to prove the truth

4

(E.D.N.Y. 2022) ("The late production prevents Defendant from inquiring at a deposition or otherwise investigating the evidence.  And the timing demonstrates the lack of diligence, rather than excusing it.")).  Because of the failure to demonstrate diligence in providing these materials by the close of discovery, Plaintiff has failed to demonstrate the good cause necessary to reopen discovery and extend deadlines-particularly since almost a year has passed since the close of discovery and the close of summary judgment briefing.

Accordingly, Plaintiff has not demonstrated good cause to amend and the renewed Motion to Amend with Evidence [ECF No. 65] is DENIED.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 35]

### A.    Background

On August 30, 2021, Judge Covello issued an Initial Review Order ("IRO") permitting only the following claims to proceed: (1) an Eighth Amendment deliberate indifference to medical needs claim against Defendants Burns, McCrystal, Freston, and Lightner, in their individual capacities, alleging "delayed treatment and testing and denial of treatment" to his left shoulder [ECF No. 21, § E at 14-18]; and (2) an Eighth Amendment deliberate indifference to safety claim against Defendant Burns, in her individual capacity, alleging that prior to his fall on November 16, 2017, Burns was aware that the tip of Plaintiff's cane had deteriorated and failed to provide Plaintiff with a new one.  *Id.* at § F(i) at 18-19.  All remaining claims against Defendants were

---

of the matters asserted therein.  Thus, it is classic hearsay.")  "It is well settled that hearsay is insufficient to withstand a motion for summary judgment."  *Id.*  Finally, Defendants argue that, as a proponent of the evidence, Plaintiff has the burden of establishing admissibility.  ECF No. 73, at 7-8 (citing *United States v. Stein*,  521 F. Supp. 2d 266, 268 (S.D.N.Y. 2007) ("As the proponent of the evidence, the government has the burden of establishing admissibility.").  Here, "Plaintiff has not provided any sworn certification attesting to the truthfulness of the entries, nor any evidence to establish the authenticity and admissibility of this material . . . ."  *Id.*

dismissed including an Eighth Amendment deliberate indifference to medical needs claim regarding an injury to Plaintiff's right elbow sustained in 2016. *See id.* at §§ A, B, C, D, F(ii), G, H. As part of the IRO, the Court ordered that all discovery be completed within six months (180 days), by February 26, 2022, and that dispositive motions be filed within seven months (210 days) from the date of this order, by March 28, 2022. *Id.* at 32. On March 28, 2022, Defendants Burns, McCrystal, and Freston timely moved for summary judgment as to all claims against them. ECF No. 35.

Judge Covello found in the IRO that although Ms. Lightner was not listed as a Defendant in the case caption of the Complaint, she was listed as a Defendant in the Complaint under the description of the parties and that Plaintiff included facts in the body of the Complaint regarding Lightner's conduct. ECF No. 21, at 2; ECF No. 1, at ¶ 12. On this basis, the Court assumed that he intended to name Lightner as a Defendant and directed the clerk of court to add Lightner to the docket as a Defendant. *Id.* at 2. On November 4, 2021, the Court directed Plaintiff to provide an address where Lightner may be served with a copy of the complaint by mail.[3] ECF No. 26. It was further ordered that, if "plaintiff fail[ed] to provide a current service address for Rikel Lightner within ninety days, the court [would] dismiss the claims asserted against her pursuant to the Federal Rules of Civil Procedure 4(m)." *Id.* Defendants correctly state that Plaintiff failed to effectuate service on Ms. Lightner within the ninety days, and no appearance has been filed on her behalf.

---

[3]     On September 9, 2021, a paralegal specialist in the State of Connecticut Department of Correction Office of Legal Affairs informed the clerk of the court that Rochelle Lightner's true first name is Rikel, and that she no longer works for Correctional Managed Care or the University of Connecticut Health Center. ECF No. 26. A copy of the complaint, the court's initial review order, and notice of lawsuit and waiver of service of summons forms were provided to the paralegal specialist for forwarding to Lightner at her last known address. *Id.* Ms. Lightner did not return a signed waiver of service of summons form to the clerk of the court or the Department of Legal Affairs. *Id.*

ECF No. 35-1, n.1; Def. 56(a)(1), at ¶ 4 n.1.  Plaintiff did not respond to the Court's November 4, 2021 Order, does not assert any claims against Ms. Lightner in his brief in opposition to summary judgment, and did not demonstrate "good cause" for failing to effectuate service or comply with the Court's order.  *See* ECF. No. 57.  Accordingly, the Eighth Amendment deliberate indifference to medical needs claims against Rochelle "Rikel" Lightner are dismissed with prejudice for failure to effect service pursuant to Federal Rule of Civil Procedure 4(m).

**B.     Applicable Legal Standard**

**1.  Section 1983**

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.  *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'"  *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Id.*  To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  Defendants do not dispute that they were acting under color of state law during the events at issue in this case.

**2.  Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on

which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Rule 56 requires the movant to cite to particular materials in the record, such as depositions, documents, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, showing that they do not establish a genuine dispute regarding the claims.  *See* Fed. R. Civ. P. 56(c).  The local rules of this Court "require any party that moves for summary judgment to file a statement of undisputed material facts along with supporting evidence."  D. Conn. L. Civ. R. 56(a)1.

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Sullivan v. Stein*, 487 F. Supp. 2d 52, 63 (D. Conn. 2007), *aff'd*, 319 F. App'x 42 (2d Cir. 2009) (quoting *Williams v. Utica College of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006)).  The Court must "view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable factfinder to decide the case in favor of the opposing party."  *Cooper v. Doe*, 3:19-cv-01794 (JAM), 2021 WL 66437, at *1 (D. Conn. Jan. 7, 2021).  The role of the Court on summary judgment "is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial."  *Id.* (citing *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017)).

Once the moving party has met their burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*"  *Caldarola*

*v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars' showing that a trial is needed." *R.G. Grp., Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

When considering a summary judgment motion filed against a *pro se* litigant, the Court is "mindful that a *pro se* party's pleadings must be liberally construed in favor of that party and are held to less stringent standards than formal pleadings drafted by lawyers." *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). "Nonetheless, '[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" *Houston,* 27 F. Supp. 3d at 351 (quoting *Rodriguez v. Hahn,* 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

In support of their Motion for Summary Judgment, Defendants filed a Memorandum of Law [ECF No. 35-1]; Local Rule 56(a)1 Statement of Undisputed Facts [ECF No. 35-2]; Medical Records [ECF No. 34], Ex. A (sealed); Connecticut Department of Corrections ("DOC")-Movement Sheet [ECF No. 35-5], Ex. B; Declaration of Kevin McCrystal [ECF No. 35-6], Ex. C; Declaration of Gina Burns [ECF No. 35-7], Ex. D; and, Declaration of Cary Freston, MD, CCHP [ECF No. 35-8], Ex. E.

Plaintiff filed an affidavit in opposition to summary judgment [ECF No. 57] along with a "Motion for Tampering with Evidence Order" [ECF No. 58]. His responsive pleading did not

include a Local Rule 56(a)2 Statement of Facts in opposition to summary judgment.[4]  Regarding the facts Plaintiff claims are in dispute, he failed to cite any evidence from the record to support his contentions.[5]

Given that no Local Rule 56(a)2 was filed, Defendants' Rule 56(a)1 statement of facts may be deemed admitted where "properly supported by the evidence."  *Wu v. Nat'l Geospatial Intel. Agency,* 3:14-cv-1603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in the context of a *pro se* plaintiff's failure to submit a Local Rule 56(a)2 statement, that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure.") (quoting *Collins v. Experian Credit Reporting Service*, No. 3:04-cv-1905 (MRK), 2006 U.S. Dist. LEXIS 72020, at *3, 2006 WL 2850411 (D. Conn. Oct. 3, 2006)).  While the Court is "required to read a self-represented 'party's papers liberally and interpret them to raise the strongest arguments that they

---

[4]     Plaintiff was provided ample notice of the requirement to file a Local Rule 56(a)2 statement.  Defendants informed Plaintiff of this requirement in their Notice to Pro Se Litigant. ECF No. 35-3.  Further, on November 3, 2022, this Court held a status conference to explain the process for filing a response to Defendants' summary judgment motion that complies with the Federal Rule of Civil Procedure 56.  ECF No. 53.  Plaintiff was advised to review Defendants' motion, memorandum, attachments, and exhibits "with particular attention to be paid to Exhibit 3 of Defendants' motion (a copy of the "Notice to Pro Se Litigants" providing important guidance in drafting a response).  *Id.* (citing ECF. No. 35-3.)  During a follow-up conference on November 15, 2022, the Court entered a scheduling order for Plaintiff to file his opposition to Defendants' Motion for Summary Judgment.  ECF No. 55.  Plaintiff filed his opposition brief on December 1, 2022.  ECF No. 57

[5]     Although not clearly referenced in his opposition to summary judgment, the Court was provided with a prison surveillance video taken on November 16, 2017, when Plaintiff sustained injuries from a fall that caused him to be transported to the medical unit for examination.  Plaintiff was provided with an opportunity to view this video.  Notably, the fall happened in the cell block, not in the medical unit, none of the Defendants were present during the fall, and there is no representation that they are depicted in the video.  "Where the parties present conflicting versions of an incident and video evidence of the incident has been submitted on a motion for summary judgment, the court must view the facts 'in the light depicted by the video' of the incident." *Olivencia v. Pun,* 3:21-cv-739 (OAW), 2022 WL 4329343, at *2 n.3 (D. Conn. Sept. 19, 2022) (citing *Scott v. Harris,* 550 U.S. 372, 380–81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

suggest,' *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), 'unsupported allegations do not

create a material issue of fact' and do not overcome a properly supported motion for summary

judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)." *Lopez v. Semple*, 3:18-

cv-1907 (KAD), 2021 WL 2312563, at *4 (D. Conn. June 7, 2021).

The Court will, nevertheless, conduct a careful review of the record in deciding this

motion. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (the court "may in its discretion

opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file"

a local rule statement of fact); *see also Houston*, 27 F. Supp. 3d at 349 ("Although [the] plaintiffs

did not file a Rule 56.1 statement, the Court has independently reviewed the record to ensure that

there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule

56.1.").

### C. Findings of Fact

The following material facts are undisputed.

### 1. Plaintiff's DOC Assigned Housing

During his incarceration, Plaintiff was housed at several facilities: MacDougall-Walker

Correctional Institution ("MWCI") from August 1, 2016 until June 7, 2018; Osborn Correctional

Institution ("Osborn") from June 7, 2018 until October 3, 2018; Cheshire Correctional Institution

("Cheshire") from October 3, 2018 until March 25, 2019; and Osborn from March 25, 2019, where

he remained until his discharge from DOC custody on January 22, 2021. Def. 56(a)1 Stat., at ¶¶

5-6 and ECF No. 35-5, Ex. B, at 2 (movement sheet).

The record shows that none of the Defendants encountered Plaintiff for purposes of

providing him medical care at any point in August 2018, or after, as none of the Defendants were

assigned to Osborn or Cheshire. *See* Def. 56(a)1 Stat., at ¶ 45; ECF No. 35-6, Ex. C, ("McCrystal

Decl."), at ¶¶ 3-4; ECF No. 35-7, Ex. D, ("Burns Decl."), at ¶ 2; ECF No. 35-8, Ex. E, ("Freston Decl."), at ¶¶ 8-10.

### 2. Defendants' Assigned Duty Stations

#### a. Nurse Gina Burns

Gina Burns is a medical nurse assigned to MWCI since approximately 2011.  ECF No. 35-2, at ¶ 11, Burns Decl., at ¶ 2.

#### b. Physician Assistant Kevin McCrystal

Kevin McCrystal is a physician assistant who was assigned to MWCI from 2010 until July 31, 2018.  ECF No. 35-2, at ¶ 9; McCrystal Decl., at ¶ 6.  On August 1, 2018, PA McCrystal was assigned to Hartford Correctional Center.  ("HCC").  *Id.* at ¶ 3.  He was never assigned to Osborn or Cheshire.  ECF No. 35-2, at ¶ 10, McCrystal Decl., at ¶ 4.

#### c. Dr. Cary Freston

In 2017 and for the first half of  2018, Dr. Freston was employed by CMHC in the position of principal physician.  Freston Decl., at ¶ 8.  During this time period he was primarily assigned to, and stationed at, Osborn, and would provide medical care to inmates housed at Osborn.[6]  *Id.* He would  also  cover,  as  necessary,  at  Willard-Cybulski  Correctional  Center,  Northern Correctional Institution, Robinson Correctional Institution, and occasionally MWCI.  *Id.*  He was never assigned to or stationed at Cheshire.  *Id.*  As of June 30, 2018, the provision of medical services transitioned from CMHC to the DOC.  Freston Decl., at ¶ 5.  At that time, Dr. Freston was no longer assigned to, or stationed at, Osborn or any other DOC facility, nor did he provide

---

[6]     CMHC was responsible for providing medical care to inmates in the custody of the DOC during Dr. Freston's employment from 2008 to June 2018.  Freston Decl., at ¶ 5.  After June 2018, the provision of medical services transitioned from being provided by CMHC to being provided by the DOC.  *Id.*  At that time, the doctor became an employee of the DOC.  *Id.*

direct medical care to any inmates as an assigned prescriber.  *Id.*  Thereafter he was stationed at DOC's Central Office.[7]  *Id.* at ¶ 9.  As such, the doctor did not encounter Plaintiff for purposes of providing him medical care, nor was he directly involved in his medical care at any time after June 30, 2018.  *Id.* at ¶ 10.

### 3.  Material Facts Regarding November 16, 2017, Medical Care and Diagnostic Testing at MWCI

Medical records indicate that Plaintiff utilized a cane to ambulate while he was incarcerated at MWCI in 2017.  ECF No. 34, at 2, 4.  On September 11, 2017, Plaintiff was issued a new cane. *Id.* at 2.  "Cane for ambulation x 1 year (cane exchanged for new one)."  *Id.*  The signature on this record appears to be from PA McCrystal.  *Id.*  A medical record dated September 14, 2017, signed by Nurse Burns confirms that the "cane issued 9/11."  *Id.* at 4.  Nurse Burns avers that she does not "recall being made aware of any complaints by Mr. Robbs concerning his cane tip in October or November 2017."  Burns Decl., at ¶ 10.

On November 16, 2017, while at MWCI, Plaintiff fell in his housing unit and was transported by wheelchair to the medical unit for examination.  Def. 56(a)1 Stat., at ¶ 16. The fall is depicted in the video provided to the Court.  In a treatment record from that day, Nurse Burns noted an injury to Plaintiff's right palm and left shoulder, assessed "visual, verbal & active bruising/slight swelling" and noted that Mr. Robbs reported "s/p fall broke fall [with right] hand." ECF No. 34, at 5; Def. 56(a)1 Stat., at ¶ 17.  Plaintiff was provided with ice and Tylenol.  *Id.*  She recommended a follow-up examination in the morning.  *Id.*; Def. 56(a)1 Stat., at ¶ 18.  Plaintiff returned to the medical unit and was seen by Nurse Burns on November 30, 2017, complaining of

---

[7]      Since February 2020, Dr. Freston held the position of Acting Regional Medical Director for the DOC.  Freston Decl., at ¶ 3.

left "shoulder popping since fall 11/16-Has had 4 shoulder surgeries.  Limited [range of motion] reports pain [decreased] axilla extending [increased] shoulder."  *Id.* at 6-7; Def. 56(a)1 Stat., at ¶ 18.  PA McCrystal was notified and Plaintiff was referred for an x-ray, which was completed the same day.  ECF No. 34, at 7; McCrystal Decl., at ¶ 7.  The record contains no treatment records from Nurse Burns after November 30, 2017.

A November 30, 2017 x-ray revealed an "age-indeterminate distal clavicle fracture. Recommend repeat radiograph with improved technique evaluation versus CT without contrast as patient had difficulty positioning for exam."  ECF No. 34, at 8.  A follow-up x-ray was taken on December 13, 2017, revealing no fracture or significant abnormalities.  ECF No. 34, at 9; McCrystal Decl., at ¶ 8.  "What was seen on the patient's prior exam and thought to . . . represent a fracture likely representing some sort of artifact."  ECF No. 34,  at 9.

On December 19, 2017, PA McCrystal found "[n]o evidence of shoulder dislocation on physical exam or xray" and noted that the x-ray results were reviewed with Plaintiff.  ECF No. 34, at 12; McCrystal Decl., at ¶ 9.  McCrystal noted that Mr. Robbs "reported to medical unit in a wheelchair for unclear reason no medical order for wheelchair found in current medical record. [Inmate] in no acute distress.  No new injuries." but complained of chronic pain and  "gave conflicting confusing story related to a variety of musculoskeletal issues and needs."  ECF No. 34, at 12; McCrystal Decl., at ¶ 9.  On examination, McCrystal found "no evidence of shoulder dislocation."  *Id.* at 12.  McCrystal noted in the treatment record, inmate "unable to clearly describe his desire for a MRI exam of L shoulder, however, will submit request on behalf of inmate."  ECF No. 34, at 12; McCrystal Decl., at ¶ 9.  A Utilization Review Committee ("URC") request was submitted for an MRI of Plaintiff's left shoulder.[8]  McCrystal Decl., at ¶ 10.  McCrystal entered

---

[8]     McCrystal explained,

an order for Motrin (600 mg) (twice per day for three months) to address left shoulder pain/discomfort.  McCrystal Decl., at ¶ 12; ECF No. 34, at 11.

The URC issued a Request Response on January 3, 2018, denying McCrystal's request for an MRI, recommending instead that treatment be provided to Mr. Robbs on-site in the form of range of motion exercises as well as providing him with a pain reliever.[9]  McCrystal Decl., at ¶ 13; ECF No. 34, at 13.

On January 9, 2018, McCrystal reviewed the URC decision with Plaintiff.  ECF No. 34, at 13.  During this meeting, and consistent with the URC's recommendation, McCrystal provided Plaintiff with range of motion exercises for his left shoulder, to be performed with a therapeutic band three times a week for two months, and entered orders for Motrin (600 mg.) for pain relief.  McCrystal Decl., at ¶ 14; ECF No. 34, at 14-18.  The record contains no treatment records from

───────────────────

The URC was a panel of correctional physicians who reviewed requests for health care referral services for inmates submitted by facility providers, including specialty and other services that were not available at the facility where the inmate was housed. The URC would review each request and determine whether to approve the request, and if the URC did not approve a request because an alternative course of treatment was appropriate, it would so indicate in its decision to the facility provider.

McCrystal Decl., at ¶ 11; ECF No. 35-1, at n.3.  PA McCrystal was not a member of the URC in 2017 or 2018.  ECF No. 35-1, at n.3. And, none of the Defendants in this case were on the URC.

[9]       The URC Request Response summarized the request for a consultation as follows;

47 yo inmate with history of multiple musculoskeletal surgeries to a variety of joints.  Complains of chronic left shoulder pain.  Trials of Elavil and Neurontin have been ineffective.  Recently started on [M]otrin for pain.  L shoulder and clavicle xrays wnl. Complains of pain 7/10 and decreased ROM.  I/M believes "something is wrong" and requests MRI evaluation.   Essentially normal examination with decreased shoulder abduction – 90 degrees secondary to pain. Request submitted on behalf of inmate

ECF No. 34, at 13.

PA McCrystal after January 9, 2018.  On August 1, 2018, McCrystal was assigned to HCC and had no further interaction with Plaintiff.  McCrystal Decl., at ¶¶ 6, 15.

Dr. Freston provided medical care on two occasions in June 2018 while Plaintiff was housed at Osborn.  ECF No. 35-8, Ex. E, Freston Decl., at ¶¶ 7-8; ECF No. 34, at 19-21 (6/8/2018); *Id*. at 22 (6/20/2018).  Neither of these encounters involved treatment for a left shoulder injury. [10] *Id.*  The record contains no treatment records from Dr. Freston after June 20, 2018.

As for the remaining medical records provided by Defendants, none relate to treatment provided by Defendants Burns, McCrystal, or Freston.  ECF No. 34, at 23-41.  And, Plaintiff has not provided any medical records in opposition to Defendants' Motion.

### D.  Discussion

This case relates to injuries to Plaintiff's left shoulder sustained in a fall on November 16, 2017 while incarcerated at MWCI.  Plaintiff alleges that Defendants were deliberately indifferent to his safety and medical needs in violation of his Eighth Amendment rights to the United States Constitution.

### 1.  Eighth Amendment -Deliberate Indifference to Medical Needs (injury to left shoulder and alleged inadequate medical treatment)

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs by failing to adequately treat his left shoulder injury.  Defendants do not contest the personal involvement of Burns and McCrystal.  Rather, they argue that claims against these Defendants fail because Plaintiff's claims do not satisfy the objective or subjective elements of the deliberate

---

[10]     In the treatment record from June 8, 2018 and again on June 20, 2018, Plaintiff was seen by Dr. Freston for an evaluation for J-1 housing at the request of Custody for a matter completely unrelated to the left shoulder injury.  *Pagan v. Colon*, No. 3:22-CV-00001 (KAD), 2022 WL 475176, at *1 (D. Conn. Feb. 16, 2022) (The J-1 housing unit at Osborn is an "open dormitory where between six and eight inmates are housed in a cubicle.").

indifference analysis.  They also argue that there is no evidence to support Plaintiff's conclusory allegations against Dr. Freston.  The Court agrees.

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'"  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976)); *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (The Eighth Amendment's ban on cruel and unusual punishment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care.").  "A deliberate indifference claim contains two requirements."  *Id*.  "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious."  *Id.* (internal quotation marks and citations omitted).  "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."  *Id.* (citing *Salahuddin*, 467 F.3d at 280).  In other words, "the charged official [must] act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result."  *Id*.  Stated differently, Plaintiff "must meet two conditions in order to be successful against any one of the defendants.  He must first show that his medical condition is objectively a serious one. . . .  Then, [Robbs] must show, for each defendant, that the defendant acted with deliberate indifference to [his] medical needs.  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citations omitted).

### a.  The objective test

The first element is "objective" and requires Plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious."  *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock*, 315 F.3d at 162.  Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an

inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).  A medical condition that is not initially serious may meet the standard where, left untreated, the condition could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). Objectively, the alleged deprivation must be "sufficiently serious," such that the condition is one "of urgency, . . . that may produce death, degeneration, or extreme pain[.]" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).

"In order to meet the objective prong for a claim of deliberate indifference to serious medical needs, the plaintiff must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order) (citing *Salahuddin,* 467 F.3d at 280).  In other words, "prison officials who act reasonably in response to an inmate-health risk cannot be found liable" under Eighth Amendment, and conversely, failure "to take reasonable measures in response to a medical condition can lead to liability." *Salahuddin,* 467 F.3d at 279–80 (internal alterations and citation omitted).

In cases, such as here, where medical treatment was provided, and the complaint is that the treatment itself was somehow inadequate, "the seriousness inquiry is narrower." *Id.* at 280; *Valdiviezo,* 752 F. App'x at 32 ("In cases where the inadequacy is in the medical treatment given, the analysis focuses on the inadequacy itself.").  In other words, if the prisoner is receiving treatment and the conduct at issue is an unreasonable delay in treatment or a challenge to the kind

of treatment received, the seriousness inquiry focuses on the challenged delay or treatment "rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance,* 143 F.3d at 702). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* (focusing on the particular risks attributable to the missed HIV medication, rather than on Smith's HIV positive status alone). To determine whether a delay in treatment created a risk of harm, the "absence of adverse medical effects or demonstrable physical injury" are factors "that may be used to gauge the severity of the medical need at issue." *Valdiviezo,* 752 F. App'x at 32  (citing *Smith*, 316 F.3d at 187).

### b. *The subjective test*

In addition to alleging a sufficiently serious medical need, a plaintiff must prove that the charged medical provider or official acted with deliberate indifference, or "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock*, 315 F.3d at 164. Although a plaintiff must prove that the defendant had actual knowledge of the risk, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient." *Id.* Put another way, the "charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citing *Salahuddin*, 467 F.3d at 280). They must have been "*actually aware* of a substantial risk that serious inmate harm will result" due to their actions or inactions. *Id.* (emphasis in original). They must know of "and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825,

837 (1994).  However, the officials need "not intend harm[;] [a]nd awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff argues that "the medical staff was negligent" and "neglected" his medical treatment in violation of his Eighth Amendment Rights."  ECF No. 57, at 2-3.  However, "[n]egligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  The official's actions must be 'more than merely negligent.'"  *Harris v. Kenny*, No. 3:21-CV-703 (CSH), 2022 WL 4252142, at *7 (D. Conn. Sept. 15, 2022) (quoting *Salahuddin,* 467 F.3d at 280).  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280.  Accordingly, allegations that sound in negligence are insufficient to establish deliberate indifference.  *See Estelle*, 429 U.S. at 106, 97 S. Ct. 285 ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

> Nor does a disagreement over the treatment provided show deliberate indifference. *Wright v. Rao,* 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."  *Chance*, 143 F.3d at 703.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Id.*

*Harris,* 2022 WL 4252142, at *7.  Simply put, Plaintiff's desire for additional medical treatment, or a particular diagnostic test, without any allegations to support that such additional treatment was necessary or related to his alleged injuries does not constitute an Eighth Amendment violation. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment

. . . . [T]he essential test is one of medical necessity and not one simply of desirability.") (citation and internal quotation marks omitted).

For the reasons that follow, Plaintiff's claim fails to meet the objective and subjective tests as to all three Defendants.

### i. *RN Gina Burns*

Plaintiff's version of the facts raises no genuine issue as to the first element of his Eighth amendment claim. Defendants submitted only two medical records, November 16 and 30, 2017, from Nurse Burns for treatment of Plaintiff's left shoulder. The objective evidence does not establish that the alleged delay and/or deprivation of adequate medical care was "sufficiently serious." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). The medical evidence shows that during the two occasions that Nurse Burns treated Plaintiff's left shoulder, she acted reasonably and took adequate measures to treat his medical condition. She completed a Patient Encounter/Nurse Sick Call report and a Medical Incident report on November 16, 2017, the day Plaintiff fell in his housing unit. ECF No. 34, at 3-5. She observed bruising and "slight swelling," provided ice to his left shoulder and APAP (Tylenol) for pain. ECF No. 34, at 5. She recommended that he follow-up at the medical unit in the morning. *Id.* Plaintiff was next seen by Nurse Burns two weeks later on November 30, 2017[11] for follow-up care complaining of pain to his left shoulder at an intensity of seven to eight on a scale of ten. *Id.* at 6-7. He reported, "left shoulder popping since fall 11/16-has had 4 shoulder surgeries. Limited ROM reports pain [decreased] axilla extending [increased] shoulder." *Id.* at 7. The treatment record shows that at 9:15 a.m. Nurse Burns spoke to PA McCrystal who referred Plaintiff for an x-ray. *Id.* An x-ray

---

[11]     There is no evidence in the record that any of the named Defendants prevented Plaintiff from returning for follow-up care *before* November 30, 2017.

of Plaintiff's left shoulder was taken on November 30, 2017, at 10:35 a.m.  *Id.* at 8.  There are no further treatment records from Nurse Burns regarding care provided to Plaintiff's left shoulder, nor has Plaintiff submitted evidence of any subsequent treatment with her.  The Court concludes that Plaintiff has not shown that the alleged deprivation of medical care was sufficiently serious to establish a likelihood of success on the merits of his Eighth Amendment claim.

Plaintiff's version of the facts raises no genuine issue as to the subjective element of a deliberate indifference claim.  *Johnson,* 412 F.3d at 403.  Viewing the parties' submissions in a light most favorable to Plaintiff, the Court cannot find any fact that indicates that Nurse Burns acted with the requisite culpable state of mind or acted outside the scope of her medical discretion. *Flynn*, 2011 WL 5865851, at *5 ("Prison administrators and medical staff have wide discretion in how they choose to treat inmates such as Plaintiff, and their decisions regarding the care and safety of patients are entitled to a presumption of correctness.") (citation and internal quotation marks omitted).  The objective medical evidence demonstrates that Nurse Burns' interactions with Plaintiff were brief and that she provided access to ice, Tylenol on November 16, and contacted Defendant McCrystal on November 30, to determine whether an x-ray should be ordered.  This amounts to adequate medical care in the absence of any evidence contradicting the treatment records.  Nothing about these two encounters demonstrate recklessness or that Nurse Burns had actual knowledge that the medical treatment provided would cause serious harm to Plaintiff, nor is there a basis on which to conclude that the risk of harm was both substantial and obvious.  *See Spavone*, 719 F.3d at 139.  Moreover, Plaintiff provides no evidence suggesting that, as a nurse, Defendant Burns even had authority to order an x-ray, MRI, or other diagnostic testing.  And, Plaintiff provided no admissible evidence that the two week gap in care was attributed to Nurse Burns.  Accordingly, the Court concludes that Plaintiff failed to demonstrate any likelihood that

Defendant Burns knew of and then disregarded a substantial risk of serious harm to Plaintiff. Accordingly, summary judgment is granted in favor of Defendant Nurse Gina Burns on this claim.

### ii.   *PA McCrystal*

Similarly, PA McCrystal provided treatment for a discrete period of time; November 30, 2017 through January 9, 2018.[12]  Plaintiff asserts that the medical care was inadequate because he should have received an MRI.

Plaintiff's version of the facts raises no genuine issue as to the first element.  The objective evidence does not establish that the alleged deprivation of adequate medical care was "sufficiently serious."  Here, the evidence submitted by Defendants reveals left shoulder pain the magnitude of which reportedly fell somewhere between a seven to eight out of ten with documented range of motion limitations.  ECF No. 34, at 6, 12-13.  While, the records indicate that his medical condition was both important and worthy of comment or treatment, they do not portray the injury as one that was urgent or may produce death, degeneration, or extreme pain.  *Hathaway*, 99 F.3d at 553.

To meet the objective prong for a claim of deliberate indifference to serious medical needs, the plaintiff must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious.  *Valdiviezo*, 752 F. App'x at 32 (citing *Salahuddin,* 467 F.3d at 280).  Where, as here, the deliberate indifference claims involve delay of treatment and/or the adequacy of treatment, the analysis of the medical need focuses on the challenged delay and/or

---

[12]     There are no other records in evidence that Plaintiff was seen by PA McCrystal after January 9, 2018 at MWCI or any other DOC facility.  Plaintiff was transferred to Osborn on June 7, 2018.  ECF No. 35-5, Ex. B, at 2.  On August 1, 2018, PA McCrystal was assigned to HCC.  *Id.* at ¶ 3.  He was never assigned to Osborn or Cheshire.  ECF No. 35-2, at ¶ 10, McCrystal Decl., at ¶ 4.

treatment.  *Id.* ("Although Valdiviezo alleged that he remained in pain during the hour-long wait, he does not allege that the delay exacerbated his injuries from his initial fall.").

Contemporaneous treatment records show that Plaintiff was afforded responsive, timely, and adequate medical attention while in PA McCrystal's care.  McCrystal entered two orders for x-rays on November 30 and again on December 13, 2017, conducted a physical examination on December 19, 2017, ordered Motrin for pain relief and submitted a URC request for an MRI.  ECF No. 34, at 7-9, 13.  The x-rays revealed no fractures or significant abnormalities requiring further treatment or care.  On examination, McCrystal noted "no evidence of shoulder dislocation."  *Id.* at 12.  The URC denied the request for the MRI on January 3, 2018, and recommended "treatment on site to include ROM and analgesics."  *Id.* at 13.  The URC's decision was reviewed with Plaintiff on January 9, 2018.  *Id.*  On the same day, PA McCrystal entered treatment orders for range of motion exercises three times a week for two months and Motrin.  *Id.* at 11, 15-16.  There is no evidence of record that PA McCrystal provided medical treatment for the left shoulder after January 9, 2018.

"Plaintiff's desire for additional medical treatment", or specific diagnostic testing, "without any allegations to support that such additional treatment was necessary or related to his alleged injuries does not constitute an Eighth Amendment violation."  *Sutton v. Rodriguez*, 18-cv-01042 (PMH), 2020 WL 5504312, at *7 (S.D.N.Y. Sept. 8, 2020).  Plaintiff "failed to offer any evidence disputing [PA McCrystal's] diagnosis of his medical condition, or showing that the treatment he received was inadequate given his condition.  Because he showed no more than that he disagreed with the course of treatment he received, his constitutional claim fails as a matter of law."  *Ventura v. Sinha*, 379 F. App'x 1, 3 (2d Cir. 2010) (summary order) (citing *Chance,* 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment

does not give rise to an Eighth Amendment violation."). Accordingly, Plaintiff cannot establish the objective prong of his deliberate indifference claim against Defendant McCrystal.

Plaintiff's version of the facts raises no genuine issue as to the subjective element of a deliberate indifference claim. The Court cannot find any fact that indicates that Defendant McCrystal acted with the requisite culpable state of mind or acted outside the scope of his medical discretion. "Prison medical staff [are] given wide discretion in determining how to treat inmates." *De Jesus v. Albright*, No. 08-cv-5804 (DLC), 2011 WL 814838, at *8 (S.D.N.Y. Mar. 9, 2011).

Plaintiff has not identified anything that McCrystal could or should have done had he examined plaintiff sooner, nor has he shown that he was harmed by any delay in treatment. The record shows that following the fall, Plaintiff was examined and given pain relievers both before and after he was seen by McCrystal on December 19, 2023, x-rays were taken and an MRI was requested. Put another way, there is no evidence that McCrystal had any knowledge that the medical treatment provided during the period of care would cause a serious risk of harm and there is no evidence that the risk of harm was both substantial and obvious.

"It is well established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703. Moreover, he has not shown that McCrystal denied him access to an MRI. Rather, the URC denied the request for an MRI in favor of conservative treatment through range of motion exercises and pain relievers. But even if he had provided evidence that McCrystal denied his request, medical decisions, such as whether to order x-rays, MRIs, or other diagnostic tests do not generally implicate the Eighth Amendment's prohibition against cruel and unusual punishment. Even an incorrect decision in this regard implicates, at most, medical malpractice. *Estelle*, 429

U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice. . . ."); *Flynn,* 2011 WL 5865851, at *5 ("[A] disagreement between an inmate and medical personnel over the course of treatment does not give rise to a deliberate indifference claim.") (citation omitted).   Accordingly, summary judgment is granted as to Defendant McCrystal on the Eighth Amendment claim.

### iii.   *Dr. Freston*

The medical records submitted by Defendants show that Dr. Freston provided medical care on two occasions in June 2018 while Plaintiff was housed at Osborn. ECF No. 35-8, Ex. E, Freston Decl., at ¶ 7-8; ECF No. 34, at 19-21 (6/8/2018); *id*. at 22 (6/20/2018).   Neither of these encounters involved a request for medical care for Plaintiff's left shoulder.  *Id.*   Plaintiff failed to demonstrate that he received treatment from Dr. Freston *or* that the doctor was subjectively reckless in his provision of and/or denial of medical care.  *Spavone,* 719 F.3d at 138 (citing *Salahuddin,* 467 F.3d at 280); *see* Freston Decl., at ¶ 10 (stating that after June 30, 2018 he "would not have encountered Mr. Robbs for purposes of providing him medical care, nor would [he] have been directly involved in his medical care.").   It is "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted).   Moreover, on claims of deliberate indifference, a plaintiff must show such indifference on the part of a "particular defendant."  *Brock,* 315 F.3d at 164.  Plaintiff has not demonstrated that Dr. Freston was directly involved in medical treatment for his left shoulder or otherwise supervised or influenced his medical care, including decisions or recommendations to Dr. Mazzocca, or other non-party physicians.  Accordingly, the

record establishes no material fact in dispute and summary judgment is granted as to Dr. Cary Freston on the Eighth Amendment claim.

### 2.   Eighth Amendment Deliberate Indifference to Safety

#### a.   RN Gina Burns

Plaintiff alleges that Defendant Burns was deliberately indifference to his health and safety by failing to provide a new cane tip in 2017.  Defendant argues that Plaintiff cannot establish his claim against Nurse Burns.  ECF No. 35-1, at 18-19.

An inmate must establish both an objective and subjective element to state an Eighth Amendment claim against a prison official based on the inmate's conditions of confinement. *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020).  First, the inmate must establish that "objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities.'"  *Id.*  Second, the inmate must show that, "subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . ., such as deliberate indifference to inmate health or safety.'"  *Id.* (alteration in original).  Plaintiff must demonstrate that the defendants knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and . . . dr[ew] that inference."  *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002).  Claims asserting only negligence, however, do not meet this standard.  *See Salahuddin,* 467 F.3d at 280.

"Conditions of confinement inflict cruel and unusual punishment when they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities.'"  *McCray*, 963 F.3d at 117 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.2d 59 (1981)).  There is no "bright line test"

to determine whether a risk of serious harm is objectively "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019).  A substantial risk of serious injury is defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Gilmore v. Rivera*, No. 13-cv-6955 (RWS), 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014) (quoting *Hathaway*, 99 F.3d at 553)).  The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).  The court considers steps the facility has taken to mitigate the danger when making this determination. *Id.*

Plaintiff alleges that he observed that small pieces were breaking off the tip of his cane and that he spent "the best part of 2017 . . . writing to medical to get a new tip." ECF No. 1, Compl., at 6.  It is Plaintiff's contention that the fall on November 16, 2017 was caused by the cane tip breaking off. *Id.*  The Court permitted Plaintiff to proceed on an Eighth Amendment deliberate indifference to safety claim against Defendant Burns based on the allegation that when she was wheeling him to the Medical Unit, he heard her state that "medical was aware of the cane tip." *Id.* at 6.

However, Plaintiff's allegations are contradicted by the evidence of record.  While the cane tip may have been deteriorating at an earlier point in 2017, the uncontroverted evidence establishes that Plaintiff received a new cane on September 11, 2017.  ECF No. 34, at 2.  Nor has Plaintiff demonstrated that Defendant Burns was aware of an issue with the cane tip and failed to take corrective action.  The undisputed evidence shows that on September 14, 2017, Plaintiff was seen by Nurse Burns reporting weakness in his fingers on his right hand "locking up."  ECF No. 34, at

28

4.  She noted that Plaintiff was "argumentative demanding wheelchair" and sent an immediate action request to PA McCrystal to evaluate "criteria for [wheelchair]."  *Id.*  At that time she noted in writing that Plaintiff was issued a cane on September 11, 2017.  *Id.*  Plaintiff has provided no evidence that Nurse Burns was made aware of any complaints associated with a deteriorating cane tip prior to the issuance of a new cane on September 11, 2017, or more relevant, at any time prior to the fall.  Put another way, there is no evidence showing that she was aware of a substantial risk of serious harm to Plaintiff *and* that she disregarded "that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 825, 114 S. Ct. 1973.  "[U]supported allegations do not create a material issue of fact' and do not overcome a properly supported motion for summary judgment."  *Lopez*, 2021 WL 2312563, at *4.  Even if the Court were to credit Plaintiff's allegation that Nurse Burns stated that the "medical unit was aware of the cane tip" [ECF No. 1, Compl., at 6], this allegation falls short of establishing that Nurse Burns knew of the specific condition of the cane tip *and* that it was in such a condition that it posed an immediate and substantial risk of serious harm to Plaintiff if it was not immediately replaced.  Rather, the evidence shows that as of September 14, 2017, when she documented Plaintiff's request for a wheelchair, Nurse Burns was aware that he was issued a new cane on September 11.  Accordingly, summary judgment is granted in favor of Defendant Burns because there is no disputed issues of fact regarding the objective and subjective elements of the Eighth Amendment deliberate indifference to health and safety standard.

## III.    CONCLUSION

As set forth above, Defendants' Motion for Summary Judgment is GRANTED in favor of all Defendants.  ECF No. 35.

Plaintiff's renewed Motion to Amend with Evidence is DENIED.  ECF No. 65.

The Eighth Amendment deliberate indifference to medical needs claims against Rochelle "Rikel" Lightner are dismissed with prejudice for failure to effect service pursuant to Federal Rule of Civil Procedure 4(m).

This is not a recommended ruling.  The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  ECF No. 46.  Appeals may be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge

30